OPINION OF THE COURT
F. Warren Travers, J.
Petitioner, a community college, has been operating a program of courses equivalent to the French educational system for the school-age children of French nationals temporarily assigned to IBM’s Dutchess County facilities. Prior to the 1981-1982 school year, IBM operated a similar program. Apparently, France has a requirement that its citizens comply with the French school curriculum in teaching French children residing outside of France.
Commencing with the 1981-1982 school year, IBM decided to contract with an educational institute to provide such education to these children. At that time, IBM entered into a contract with petitioner.
In addition to contracting with IBM, petitioner submitted the French school curriculum to State University of New York (SUNY) for its approval as a contract course. Approval as a contract course would enable petitioner to receive State education aid (8 NYCRR 602.8 [e], promulgated pursuant to Education Law § 6304). The course was approved and petitioner received State aid for the course.
Upon audit by the Comptroller’s office, the aid was disallowed in the sum of $304,324. Repayment to the State was to be accomplished by reducing future State aid in 12 quarterly installments of $25,360 each. In addition to the State aid received, petitioner has been paid by IBM, pursuant to its contract, all direct costs plus 10% for overhead expenses. Petitioner asserts, however, that its overhead expenses exceed the amount it billed IBM by approximately 29%.
To resolve the issue, it becomes necessary to interpret section 6304 (1) (b) (i) of the Education Law, which provides in pertinent part, "Operating costs shall include courses offered for the purpose of providing occupational training or assistance to business for the creation, and retention of job opportunities, and for the improvement of productivity, through contracts or arrangements between a community college and a business * * * to promote labor-management relations, productivity, the quality of working life, industrial development, *41 and retention of business in the community.” SUNY had approved the contract course as meeting the requirements of the Education Law. The Comptroller’s office upon audit determined that the contract course did not meet the requirements and disallowed State financial aid.
Petitioner asserts that the IBM French school contract course is within the scope and intent of the Education Law; that the determination of SUNY should be upheld because it is the agency with the responsibility for implementing rules and regulations related to section 6304 of the Education Law and that the penalty of retroactive disallowance of State aid is arbitrary and capricious. Respondent disagrees with each assertion.
The parties have submitted memoranda of law, but no case in point is cited. This court finds no case that specifically interprets the provision of the Education Law recited herein.
The plain language of the law states that operating costs shall include courses offered for the purpose of providing occupational training or assistance to business for the creation and retention of job opportunities. The Assembly memorandum, submitted in accordance with its rules, in support of the bill makes it clear that "contract courses” are organized to meet specific occupational needs, particularly in technical areas. The justification for the bill states that use of contract courses will offer additional employment opportunities to the State’s citizens, assist business and industry by upgrading the skills of the labor pool, and bolster the State’s economic development.
Considering the intent of this legislation, the court agrees with the Comptroller’s interpretation that the IBM French school curriculum does not meet the standards set forth by the Education Law. The contract course provides for the general educational requirements of school-age children of citizens of France temporarily assigned to IBM’s Dutchess County facilities. Educating children of employees is one step removed from the intent of the law. "Whether administrative action violates applicable statutes and regulations is a question within the traditional competence of the courts to decide.” (Matter of Dental Socy. v Carey, 61 NY2d 330, 335.)
Respondent Comptroller has the power, acting in a quasi-judicial capacity, to audit expenditures of State funds which have previously been approved by another State agency, and to retroactively disallow said expenditures and recoup said *42 funds (City of New York v State of New York, 40 NY2d 659). As stated by Judge Cardozo in People ex rel. Desiderio v Conolly (238 NY 326, 333) the power to audit is the power to "hear and examine, and thereupon to allow or to reject”.
The Comptroller was acting within the scope of his authority in auditing State aid payments and in disallowing payments made without legal authority (see, State Finance Law §8, "Duties of the comptroller”). The interpretation of SUNY in approving the contract courses where no particular administrative expertise is necessary is not binding upon the Comptroller.
Petitioner relies upon Matter of Board of Educ. v State Educ. Dept. (116 AD2d 939) to establish that the retroactive disallowance of State aid was arbitrary and capricious. In that case, the Comptroller’s office changed an audit policy and determined not to apply the disallowance retroactively. In the case now before the court, the facts are different in that no change in audit policy occurred. Refund of money improperly paid is not an arbitrary or capricious penalty.
At oral argument, the court granted a preliminary injunction in this matter. The preliminary injunction is hereby vacated. Petitioner’s request for relief is denied. Respondent’s request for dismissal of the petition is granted, all without costs.